# COURT OF APPEALS OF VIRGINIA

### Record No. 0699-25-2

PAUL STEVEN JONES

v.

COMMONWEALTH OF VIRGINIA

Present: Chief Judge Decker, Judges Beales and Athey
Argued at Richmond, Virginia

Opinion Issued July 7, 2026[*]

## FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
Ricardo Rigual, Judge

Charles E. Haden for appellant.

Lauren C. Campbell, Assistant Attorney General (Jason S. Miyares,[1] Attorney General, on brief), for appellee.

## MEMORANDUM OPINION BY
## CHIEF JUDGE MARLA GRAFF DECKER

Paul Steven Jones appeals his convictions for two counts of forcible sodomy of a child under the age of thirteen, two counts of indecent liberties with a child under the age of fifteen, and one count of aggravated sexual battery of a child under the age of thirteen in violation of Code §§ 18.2-67.1, -67.3, and -370. He challenges the failure of four of the five indictments to identify which of two children was the victim of each offense. Additionally, he suggests that the testimony of the two victims was inherently incredible and therefore insufficient to support the jury's verdicts. For the reasons that follow, we affirm Jones's convictions.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

BACKGROUND[2]

Jones was in a romantic relationship with a woman named Kimberly from 2012 to 2015. From June 2014 to June 2015, the couple lived in an apartment in Spotsylvania County with Kimberly's three minor children—her daughters A.C. and B.C., as well as her son.[3] Jones committed the charged sexual offenses against Kimberly's daughters during the ten-month period between August 1, 2014, and June 1, 2015. A.C. was a ten-year-old in the fourth grade during most of that time frame, turning eleven near the end of it. B.C. was eight and nine years old and in the third grade when the abuse occurred. A.C. and B.C. reported Jones's sexual abuse of them to law enforcement in March 2023, when A.C. was eighteen years old and B.C. was seventeen.

The evidence at Jones's 2024 trial established that when A.C. and B.C. got home from school during the time frame at issue, they were often alone with Jones.[4] According to the victims, on multiple occasions, Jones forcefully put his penis in each of their mouths, using his hand to push each child's head. He would stop "if [the child's] teeth bothered [his penis]," and at least once, he turned the sexual abuse into a competition "to see . . . who could" perform the fellatio "better." Jones threatened to beat or kill them if they told anyone about the sexual abuse.

---

[2] On review, the appellate court "[]view[s] the evidence in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Tomlin v. Commonwealth*, 302 Va. 356, 361 (2023) (quoting *Commonwealth v. Barney*, 302 Va. 84, 96 (2023)). That principle requires the reviewing appellate court to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn []from [that evidence]." *Cappe v. Commonwealth*, 304 Va. 86, 87 (2025) (per curiam) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018) (per curiam)).

[3] This opinion uses the children's initials to protect their privacy.

[4] The sisters explained that their mother typically worked later than Jones and their brother was usually outside or at a friend's house.

Jones forced A.C. to perform fellatio on him in this manner at least twice while she was alone with him and at least once when she and her younger sister were "together." Jones also forced B.C. to perform fellatio on him more than once when only she and Jones were present. B.C. also testified about an additional incident of Jones's criminal sexual conduct. Once while they were alone in her bedroom, Jones put his hand "up [her] shirt" and touched her "breast area." He then put both hands "down [her] pants" and touched her vagina.

According to A.C. and B.C., they did not fully realize at the time that what Jones was doing to them was wrong. When they were taught sex education in middle school, they more fully understood the wrongful nature of his behavior. By then, however, Jones was no longer living with them and their mother, and they had not seen him in more than a year.[5] A.C. explained that the girls were still "traumatiz[ed]" by the abuse, so they did not report it.

In September 2022, the younger sister, B.C., who was sixteen years old at the time, told her mother about Jones's abuse. B.C. did not want to report the abuse to law enforcement, and her mother did not force her to do so.

In February 2023, after A.C., the older sister, had turned eighteen and graduated from high school, Jones "reached out" and tried to "friend[]" all three of Kimberly's children on the social media platform Facebook. B.C. and her brother declined the friend request. A.C. accepted the request and sent Jones a series of confrontational messages. She wrote that he "kn[e]w how much shit [he] put [her] thr[ough]," as well as "what [he] did to [her] mom," and that "[f]orcing [her and her sister] to do things at a young age . . . was not okay." She continued that he "should just be grateful [she] never said a word to anyone" and she "hope[d he] g[o]t

---

[5] Jones and Kimberly broke up around February 2015 after he verbally and physically abused her. Even so, she and her children continued to live in his apartment, with Jones residing there off and on, until the lease ended in June.

what[ wa]s coming to [him]." After A.C. sent the messages, Jones blocked her on Facebook. After Jones's contact, A.C. reported the sexual abuse to her father, stepmother, and the police.[6]

Jones defended against the charges by suggesting that the sisters manufactured the claims because they blamed him for not being able to see their father while he and their mother were together.[7] The prosecution's evidence, however, refuted that theory. B.C. specifically denied that her father "put [her] up to" fabricating allegations that Jones sexually abused them. The victims' father also denied "put[ting] the[m] up to . . . com[ing] forward" in 2023, nine years after the father's last contact with Jones and eight years after Kimberly broke up with Jones.

Detective Kaitlyn Herzig of the Spotsylvania County Sheriff's Office, who interviewed A.C., B.C., and their father about the allegations, testified she thought it was "unlikely" that the sisters were "trying to get back at" Jones by making up the charges. She explained that signs of fabrication could include a situation in which the alleged victims were "currently being kept away from" their father and "ma[d]e an allegation to change that situation," which was not the case for A.C. and B.C.

The Commonwealth also introduced expert testimony that it is "very common" for child victims of sexual abuse to delay reporting. The expert explained that typical reasons for delay are threats made by the abuser and the desire "just . . . to forget" about the abuse and "move on with their lives." She further related that reasons that might cause a victim to report after a delay

_____

[6] B.C. initially opted not to pursue charges against Jones for her own abuse, but she later changed her mind.

[7] Evidence at trial established that while Jones, Kimberly, and the children lived outside Virginia from 2012 to 2014, the children did not have visitation with their father. It also showed that they saw him only sporadically from 2014 to 2015. And during a chance meeting between Jones, the children, and their father in 2014, the two men had a verbal altercation about the father's right to see the children.

could be either the removal of the threat or some sort of trigger like the abuser's effort to contact the victim on social media.

Defense counsel cross-examined the sisters about inconsistencies in their reports concerning the abuse. He asked A.C. whether she told Detective Herzig that Jones sexually abused her on "thirty plus" occasions during the year at issue. A.C. testified she did not recall making that statement.

When defense counsel questioned B.C., she acknowledged some inconsistencies in her statements. She admitted that she initially reported recalling "a number of times" when Jones held "a competition" between her and her sister but that she testified at Jones's trial about only one such incident. B.C. also admitted stating when interviewed that Jones always ejaculated during the incidents but testifying at trial that some of them "end[ed] with . . . him pulling back." Finally, although she originally testified the incidents of abuse occurred downstairs in the apartment, she suggested that "different times" had "happened in different places."

Jones testified in his own behalf. He denied that A.C. and B.C.'s trial testimony about him sexually abusing them was true. He claimed that the children's father complained in 2014 "that it was [Jones's] fault that he couldn't see his kids for two years" and threatened Jones with physical violence. Jones said he believed that the sisters lied because they hated him due to the prior custody battle between their parents.

Defense counsel made motions to strike the evidence. He argued that A.C. and B.C. made prior inconsistent statements, and he noted inconsistencies between their claims. Counsel suggested their testimony was not credible and they were biased against Jones. He also pointed to the lack of "specific dates," "times," or "even" a "specific season" for the abuse. Finally, counsel noted that four of the five indictments did not name which of the sisters Jones was alleged to have abused. He contended that these indictments contained "fatal defect[s]" or

"variance[s]" and that his client's due process rights to "notice and a fair hearing" were violated as a result.[8] The trial court denied the motions to strike.[9]

While instructing the jury, the trial court gave the model instruction on witness credibility, including explaining the jurors' ability to consider the witnesses' prior inconsistent statements and possible bias. *See* Model Jury Instrs.—Crim. No. 2.500. The court also told the jury that it was to "determine which witnesses [we]re more believable" and to choose whether to "accept or discard all or part of the testimony of a[ny] witness" after "consider[ing] all the evidence in the case." *See id.* The jury convicted Jones of the five offenses challenged on appeal.

After trial, Jones made a motion to set aside the verdicts. He renewed the arguments made during his motions to strike the evidence at trial but focused on the claim that the testimony of the complaining witnesses was inherently incredible. He noted the lack of any forensic or physical evidence. Additionally, he pointed to the sisters' inconsistent statements, lack of specificity regarding precisely when the abuse happened, and motive to lie to get back at him. Finally, defense counsel noted the sisters' delay in reporting the abuse as an additional factor establishing the incredibility of their testimony.

The trial court denied the motion. It sentenced Jones to two mandatory life terms, plus forty years in prison with twenty-eight years suspended, with all sentences to run consecutively.

---

[8] Defense counsel conceded that he could have asked for a bill of particulars. He explained that he did not notice the issue until shortly before trial and felt the need "to at least make a record" of the failures to "allege[] a specific victim."

[9] The court granted Jones's motion to strike an additional charge.

- 6 -

On appeal, Jones broadly assigns error to the trial court's "den[ial of his] motion to strike the five counts" of sexual abuse of which he was convicted at trial.[10]  We first consider the proper scope of his assignment of error and then turn to the merits of the appellate challenge remaining before this Court.

### I.  Scope of Assignment of Error and Briefing

Rule 5A:20(c) requires an opening brief to "list . . . the specific errors in the rulings below . . . upon which the party intends to rely."  The rule warns that "[a]n assignment of error . . . merely stat[ing] that the judgment or award is contrary to the law and the evidence[] is not sufficient," and "[i]f the assignments of error are insufficient, the appeal will be dismissed."  Rule 5A:20(c)(2).

We assume without deciding that the phrasing of Jones's single assignment of error, such as it is, complies with the general requirements of Rule 5A:20(c).  *See Shaw v. Commonwealth*, 304 Va. 217, 233 (2025) (noting that appellate courts should strive to "decide cases on the best and narrowest ground[]" (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015))); *Morris v. Commonwealth*, 77 Va. App. 510, 517 n.2 (2023) (en banc) (recognizing that "'assum[ing] without deciding' that [an] issue can be reviewed" may provide the best and narrowest ground for decision (quoting *McGinnis v. Commonwealth*, 296 Va. 489, 501 (2018))).[11]

_____

[10] Jones was represented by different counsel at trial.

[11] The Supreme Court of Virginia has recognized a difference between an assignment of error challenging "a particular preliminary ruling of the trial court," such as the denial of a motion to suppress, and one that "broadly criticiz[es] the trial court's judgment as being contrary to the law." *Findlay v. Commonwealth*, 287 Va. 111, 116 (2014); *see Barnes v. Commonwealth*, 80 Va. App. 588, 594-95 (2024) (applying *Findlay*, which addressed the scope of assignments of error in petitions for appeal under Rule 5A:12(c), when interpreting substantively identical language in Rule 5A:20(c) applying to the specificity required for assignments of error in opening briefs).  The preliminary-ruling challenge is generally narrow enough to comply with

We turn next to Rule 5A:20(e), which requires that an opening brief contain "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." It is well established that "[u]nsupported assertions of error 'do not merit appellate consideration.'" *Bartley v. Commonwealth*, 67 Va. App. 740, 744 (2017) (quoting *Jones v. Commonwealth*, 51 Va. App. 730, 734 (2008), *aff'd in part and vacated in part on other grounds*, 279 Va. 52, 58-60 (2010)). Stated plainly, "[i]t is not the role of the [appellate] court[] . . . to . . . construct a litigant's case or arguments for him." *Id.* at 746 (first alteration in original) (quoting *Sneed v. Bd. of Pro. Resp.*, 301 S.W.3d 603, 615 (Tenn. 2010)), *quoted with approval in Coward v. Wellmont Health Sys.*, 295 Va. 351, 367 (2018); *see Cappe v. Commonwealth*, 304 Va. 86, 90-91 (2025) (per curiam).

Instead, the appellate court must first determine whether the appellant has complied with Rule 5A:20(e) in a manner sufficient to permit the court to address the issue. "'[W]hen a party's "failure to strictly adhere to the requirements of Rule 5A:20(e)" is significant,' this Court may treat the question as waived." *Conley v. Commonwealth*, 74 Va. App. 658, 681 (2022) (alteration in original) (quoting *Bartley*, 67 Va. App. at 744); *see also Gilbert v. Commonwealth*, 87 Va. App. 472, 488 n.8 (2026) (holding an argument was barred in part because the appellant did not address it on brief and raised it for the first time in oral argument); *cf. Jeter v. Commonwealth*, 44 Va. App. 733, 740-41 (2005) (holding that arguments cannot be developed for the first time in a reply brief in part because the appellee has "no meaningful opportunity" to respond under those circumstances[12]).

---

Rule 5A:20(c), while the judgment-is-contrary-to-the-law challenge generally is not. *See Findlay*, 287 Va. at 116.

[12] In any event, Jones did not file a reply brief.

Jones's opening brief sets out the standard of review for challenging the sufficiency of the evidence and the burden of proof at trial. It also addresses the elements of the crimes of which he was convicted, as well as the principles applicable to assessing witness credibility and inherent incredibility in sexual-abuse cases, including those relating to delays in reporting. The brief quotes extensively from defense counsel's argument on his motions to strike the evidence in the trial court. But it does not provide further independent argument, analysis, or supporting authorities for the defective-indictment and related due-process arguments he made below.

Despite the brief's failures, Jones contended vociferously at oral argument that four of the five indictments were defective because they failed to allege which of the two sisters was the victim. In support, he noted defense counsel's argument on this point in the trial court, thereby purporting to show preservation for purposes of the contemporaneous objection rule. *See* Rule 5A:18. We are unpersuaded by his position. He confuses compliance with Rule 5A:18 with the requirements of Rule 5A:20.

Jones's opening brief merely quotes trial counsel's claims that the omissions were "fatal defect[s] in the indictment[s]" or "variance[s] in the evidence" amounting to "due process" violations. As appellate counsel acknowledged at oral argument, the opening brief provides absolutely no analysis or citation to authority specific to fatal-variance claims. The authorities cited in the opening brief on appeal simply do not relate to defective indictments. Nor do they support the position that the indictments had to specify which of the two sisters was the victim of each crime. The brief also does not address the principle, correctly acknowledged by defense counsel at trial, that he could have requested a bill of particulars requiring the prosecution to identify the victim of each charged crime before trial. *See* Code § 19.2-230. Finally, the brief cites no authority at all relating to due process.

Significant circumstances supporting a waiver exist when an appellant's "failure to provide legal argument and authority as required by Rule 5A:20(e) leaves [this Court] without a legal prism through which to view [the] alleged error." *Bartley*, 67 Va. App. at 746; *see Mitchell v. Commonwealth*, 60 Va. App. 349, 353 (2012) (holding that the appellant's citation to one case and one statute was "insufficient to satisfy Rule 5A:20(e)"); *see also Amazon Logistics, Inc. v. Va. Emp't Comm'n*, 304 Va. 107, 111-12 (2025) (per curiam) (holding that the Supreme Court's "bad-brief waiver [rule] applies [when] an appellant makes [only] a cursory argument . . . and fails to provide sufficient legal reasoning, factual analysis, or citations to authority" (quoting *AlBritton v. Commonwealth*, 299 Va. 392, 412 n.12 (2021))); *Cappe*, 304 Va. at 90 (holding under the Supreme Court's similar rule that the appellant waived his right to challenge this Court's harmless error determination because his claim was "unsupported by any argument" in his brief); *Fadness v. Fadness*, 52 Va. App. 833, 851 (2008) ("Appellate courts are not unlit rooms where attorneys may wander blindly about, hoping to stumble upon a reversible error. If the [appellant] believe[s] that the [trial] court erred, it [i]s [his] duty to present that error to [the appellate court] with legal authority to support [his] contention.").

Jones failed on brief to engage in any discussion of or citation to authorities specifically addressing his eleventh-hour appellate challenge to the failure of the indictments to name which sister was the victim of each crime. As a result, he failed to provide necessary support for the associated fatal-variance and due-process claims he made at oral argument. We conclude that Jones's failure on brief to analyze these claims or cite any relevant legal authority beyond general sufficiency concepts (addressing only the standard of review, burden of proof, and elements of the crimes) is significant. Accordingly, we hold that Jones waived these particular arguments on appeal.

## II. Sufficiency of the Evidence

Even so, Jones, on brief, properly contests certain aspects of the sufficiency of the evidence to support his convictions. "When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "[T]he judgment of the [fact finder] is presumed correct and will not be disturbed unless it is [']plainly wrong or without evidence to support it.[']" *Commonwealth v. Wilkerson*, 304 Va. 92, 100 (2025) (first alteration in original) (quoting *Garrick*, 303 Va. at 182)); *see Cuffee v. Commonwealth*, ___ Va. ___, ___ (Apr. 16, 2026). "[I]t is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion." *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (second and third alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)); *see Commonwealth v. Richerson*, ___ Va. ___, ___ (Apr. 23, 2026). The question on appeal is "whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Cappe*, 304 Va. at 87 (emphasis added) (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)).

Jones challenges the credibility of the testimony of A.C. and B.C. to prove that he committed the offenses of forcible sodomy and indecent liberties against them and aggravated sexual battery against B.C. He contends that their testimony was vague and unspecific in some respects, "especially a[bout] date and time," and contradictory in others, such as regarding where the abuse took place. He also notes the absence of corroborating physical evidence or testimony from others who lived in the house where the abuse occurred, as well as the lack of any incriminating statements by him. Finally, he points to the sisters' "long delay of . . . up to eight or

nine years in reporting." Jones suggests that all of these factors "rendered the [victims'] allegations . . . incredible as a matter of law."[13]

Among the sufficiency determinations to which the appellate court must "give[] deference [are] the trier of fact's finding[s] of witnesses' credibility." *Sample v. Commonwealth*, 303 Va. 2, 16 (2024). Consistent with that general principle, "[i]t is firmly imbedded in the law of Virginia that the credibility of a witness who makes inconsistent statements on the stand is a question for the . . . trier of the facts." *Lockhart v. Commonwealth*, 34 Va. App. 329, 342 (2001) (quoting *Swanson v. Commonwealth*, 8 Va. App. 376, 378-79 (1989)); *see Juniper v. Commonwealth*, 271 Va. 362, 415 (2006). So under most circumstances, "[i]f the trier of the facts sees fit to base the verdict upon [a witness's] testimony [called into question by that same witness's contradictory statements,] there can be no relief in the appellate court." *Lockhart*, 34 Va. App. at 342 (quoting *Swanson*, 8 Va. App. at 379).

As a result, witness testimony, if accepted by the trier of fact, may typically be attacked on appeal only if it is "inherently incredible" as a matter of law. *See Sample*, 303 Va. at 16 (quoting *Gerald v. Commonwealth*, 295 Va. 469, 486 (2018)). "To be 'incredible,' testimony 'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Lambert v. Commonwealth*, 70 Va. App. 740, 759 (2019) (quoting *Juniper*, 271 Va. at 415). "A legal determination that a witness is inherently incredible is very different from the mere identification of inconsistencies in a witness'[s] testimony or statements. Testimony may be

---

[13] Jones's brief does not challenge the sufficiency of the evidence, *if the victims' testimony is believed*, to prove the specific elements of the offenses. Though he alludes to the "vague[ness]" of the victims' testimony "regard[ing the] date and time" of the offenses, he provides no analysis of these claimed deficiencies other than to suggest the vagueness further supports his argument that the sisters' testimony was inherently incredible. Consequently, we consider only the overarching inherent-incredibility argument. *See Conley*, 74 Va. App. at 681-82.

contradictory or contain inconsistencies without rising to the level of being inherently incredible as a matter of law." *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019). As such, "'[p]otential inconsistencies in testimony are resolved by the fact finder,' not the appellate court." *Id.* (alteration in original) (quoting *Towler v. Commonwealth*, 59 Va. App. 284, 292 (2011)). And that entity— whether judge or jury—"is free to believe or disbelieve, in whole or in part, the testimony of any witness." *Rams v. Commonwealth*, 70 Va. App. 12, 38 (2019); *see Commonwealth v. McNeal*, 282 Va. 16, 22 (2011). Simply put, the fact finder's conclusions about witness credibility "will not be disturbed on appeal unless plainly wrong." *Smith v. Commonwealth*, 56 Va. App. 711, 718 (2010).

Jones's appellate challenge relates to his five convictions for criminal sexual abuse. "[S]exual offenses are typically clandestine in nature, seldom involving witnesses to the offense except the perpetrator and the victim . . . ." *Cardenas Flores v. Commonwealth*, 84 Va. App. 495, 517 (2025) (quoting *Garland v. Commonwealth*, 8 Va. App. 189, 191 (1989)). And it is axiomatic that proof of criminal sexual abuse may be established solely on the uncorroborated testimony of the victim as long as it is not inherently incredible. *See Nobrega v. Commonwealth*, 271 Va. 508, 519 (2006); *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991). "[C]orroborating physical or testimonial evidence" simply is not required. *Love v. Commonwealth*, 18 Va. App. 84, 90 (1994); *see Fisher v. Commonwealth*, 228 Va. 296, 297, 299-300 (1984) (affirming convictions for sodomy and attempted rape of a ten-year-old child based only on her testimony).

While corroborating evidence was not required in the instant case, such evidence supported each victim's credible testimony. Here, the two child victims, who were between eight and eleven years old when the abuse occurred and were young adults when they testified at trial, corroborated each other's accounts of Jones's criminal sexual acts against them. *See Lambert*, 70 Va. App. at 760 (holding that corroborated testimony was not inherently incredible).

The jury heard both young women testify that the abuse took place in the apartment they shared with their mother, brother, and Jones, and the parties stipulated that they all resided there from June 2014 to June 2015. B.C. testified that she was present during at least one incident in which Jones forced only A.C. to perform fellatio on him. Both sisters also testified about an incident in which Jones created what he described as a competition between them to perform the same sexual act. That their memories diverged regarding precisely where inside the apartment the various instances of abuse took place was not fatal to the Commonwealth's case as long as the jury found their recountings of the crimes themselves credible, which it clearly did. A.C. and B.C. also both testified that the incidents they *"remember[ed]"* took place in a particular location in their home, but they did not state that Jones committed all the sexual abuse in that same location. (Emphasis added). Further, despite Jones's claim that neither victim could remember the season in which the abuse occurred, A.C. testified that the weather was warm.

The victims' delay of about eight years in reporting also did not render their testimony inherently incredible. Such a delay "does not necessarily render . . . testimony unworthy of belief." *Juniper*, 271 Va. at 415; *see Rodriguez v. Commonwealth*, 85 Va. App. 664, 696 (2025) (recognizing that a "child's delay in reporting sexual abuse is not 'so contrary to human experience'" (quoting *Abouemara v. Commonwealth*, 77 Va. App. 719, 731 (2023))). A victim's "failure to report . . . for an unreasonably long period [can] cast[] 'suspicion and doubt' on the victim's testimony," but the trier of fact is free to accept what it finds to be "'a credible explanation for such [a] delay.'" *Wilson v. Commonwealth*, 46 Va. App. 73, 88 (2005) (quoting *Willis v. Commonwealth*, 218 Va. 560, 563 (1977)); *see Love*, 18 Va. App. at 85-86, 89-90 (holding that the thirteen-year-old victim's seven-year delay in reporting ongoing sexual abuse that began when she was five did not render her testimony inherently incredible). Simply put, when the testimony of a victim or other evidence in the record provides the jury with an

- 14 -

explanation for the delay in reporting that the jury finds reasonable, that explanation may serve as a basis for it to conclude the victim's testimony is credible. *See Love*, 18 Va. App. at 89-90.[14] This is precisely what happened here.

To begin with, Jones threatened to kill or beat the child victims if they told anyone. And the young women explained that as children, they did not fully comprehend the wrongfulness of his actions toward them until middle school. By that time, they no longer had any contact with Jones. Still "traumatiz[ed]" by the abuse, the girls did not report it at that time. B.C. told her mother several years later, in 2022, but chose not to report the abuse to authorities until A.C. did so. A.C. did not reveal the traumatic abuse until 2023, when Jones reinitiated contact with her through social media. The prosecution's expert testified that it is common for victims to avoid reporting sexual abuse contemporaneously and to do so only later, in response to a triggering event. The expert added that being contacted by the abuser on social media could be just such an event. By convicting Jones of the five counts of criminal sexual abuse, the jury resolved any concerns about the sisters' delay in reporting in favor of their credibility.

Notably, Jones chose to testify in his own defense, permitting the jury to compare its assessment of the credibility of A.C. and B.C. directly to its assessment of Jones's. It was entitled to reject Jones's denials and to conclude from the evidence as a whole, including the sisters' recounting of the sexual abuse, that he committed the charged offenses. *See Cornell v. Commonwealth*, 76 Va. App. 17, 30 (2022) (providing that the fact finder could consider the sexual abuse victim's testimony and the defendant's denials and conclude that the defendant lied to conceal his guilt); *see also Camann v. Commonwealth*, 79 Va. App. 427, 443 (2024) (en banc) (holding

---

[14] Other decisions from this Court have reached similar conclusions. *See Smith*, 56 Va. App. at 719; *Brown v. Commonwealth*, 37 Va. App. 169, 173-74 (2001).

that the trier of fact could both reject a defendant's testimony as false and consider the perjury as evidence of his guilt).

Jones also argues that the evidence failed to exclude all reasonable hypotheses of his innocence. He suggests, as he did below, that A.C. and B.C. "simply made up their allegations" because they hated him for keeping them from their father and "mistreat[ing] their mother." Jones misunderstands the reasonable-hypothesis principle.

First, the principle applies *only* to circumstantial evidence. *See Cuffee*, ___ Va. at ___. It "is an attempt to explain the uncontroversial ideas 'that circumstantial evidence must exclude every *reasonable* theory of innocence' and that 'the Commonwealth has the burden of proof beyond a reasonable doubt.'" *Id.* at ___ (quoting *Vasquez v. Commonwealth*, 291 Va. 232, 249-50 (2016) (emphasis added)); *see Commonwealth v. Mahoney*, ___ Va. ___, ___ (June 11, 2026). This case turns not on circumstantial evidence but on the direct testimony of the victims, each corroborating the other, that Jones sexually abused them. So the principle is inapplicable here.

Second, even if the reasonable-hypothesis principle applied in a case involving direct testimony, it "requires . . . [an] acquit[al only] when the evidence provides no reasonable basis for a factfinder [to] choos[e]" between guilt and innocence as "equally likely options." *Cuffee*, ___ Va. at ___. Before the principle is applied, the fact finder, here the jury, determines the facts, including the credibility of the witnesses. *See Fary v. Commonwealth*, 77 Va. App. 331, 347 (2023) (en banc), *aff'd*, 303 Va. 1 (2024). "Whether an alternate hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong." *Mahoney*, ___ Va. at ___ (quoting *Cuffee*, ___ Va. at ___). Put another way, unless a finding of fact or inference is plainly wrong, the "appellate court may neither find facts nor draw inferences . . . favor[ing] the losing party that the factfinder did not." *Richerson*, ___ Va. at ___

(quoting *Garrick*, 303 Va. at 182). In the instant case, the jury's verdicts reflect findings that the victims testified credibly about Jones's criminal sexual abuse and that Jones lied when he testified that he did not commit the charged acts. Consequently, the reasonable-hypothesis principle—even if it applied—would not support his claim for a reversal of his convictions.

The jury, sitting as the trier of fact, accepted the testimony of A.C. and B.C. as credible and rejected Jones's testimony as untrue. Its conclusions may not be overturned on appeal because the sisters' testimony was not, as a matter of law, inherently incredible or so contrary to human experience as to render it unworthy of belief.

CONCLUSION

Jones waived his challenge to the failure of four of the indictments to identify the victim by not providing an analysis of that issue or citing supporting authority in his brief. Additionally, the testimony of A.C. and B.C. was not inherently incredible, and the evidence was sufficient to support the convictions. Consequently, we affirm Jones's convictions.

*Affirmed.*